Thank you. Thank you, Judge Gould. And on behalf of my client, I appreciate the opportunity to argue his case. I know it's something important to him. As the Court's aware, the parties have approached this case, I think, from somewhat different angles. But the issue, as it's presented by Mr. Roundstone, is essentially a sufficiency of the evidence issue, and that is whether or not the government established sufficient evidence to establish his guilt under the federal kidnapping statute. I think the important thing from our perspective is the elements of the statute obviously require that the defendant acted knowingly and purposely to kidnap, take away, conceal, abduct the victim, and thereafter held the victim for an appreciable period of time. The evidence, I think, particularly when viewed from the mental state of the defendant, is insufficient to establish both that he acted knowingly and willfully to kidnap her or otherwise held her. Now, admittedly, this case is somewhat disturbing. His actions towards the victim he acknowledged, I think, explicitly when he testified to numerous assaults upon her over a period of hours. But at the same time, in the midst of doing all of that, she testified that she went with him because she was afraid that he would go to the tribal court and do something to get custody of their daughter. Didn't she say she was dragged into the vehicle? There was, as I recall, a neighbor. What she testified to, as I recall, is that she was afraid that he would go to the tribal court. She got their daughter ready, brought the daughter out to the car, and the assaults essentially began at the car. But she was going out there to go with him, as I say, because she didn't want to leave her daughter, because she was afraid of custody issues. There was a neighbor that said that she heard a scream and saw her being dragged into the car. I think looking at that, however, especially with the victim's testimony about her motivation in going, i.e., the custody issue, is that there was an assault that occurred there, but it wasn't a kidnapping. So your position is that the jury would have to infer from that that she went voluntarily? Yes, or at least not for an unlawful purpose, I guess. If she's afraid that he's going to get custody of the child and then go to tribal court, she may or may not feel like she wants to go, but I don't know that that creates an unlawful purpose or establishes a kidnapping. Mr. Ness, if I could ask a question. There's no challenge to the jury instructions, I take it? No, Your Honor. The only issue is sufficiency of evidence under Jackson v. Virginia? Yes, that is correct. Okay. So then your position has to be that no rational jury with that evidence, no rational jury could find beyond a reasonable doubt that she was taken against her will? I would agree. A very tough standard. I would agree with that, yes, Judge. The evidence was in conflict, wasn't it? He testified he didn't restrain her against her will, although he did beat her and do other things to her. She said she was restrained, and it looks like the jury believed her. Aren't we stuck with that finding of credibility? I think this is where you've got to get into the mental state evidence. She testified she felt restrained. She testified that she felt like she couldn't leave. On the other hand, they're going to all these different places. They're going to the gas station two times. He lives in an unlocked home off the highway with a neighbor who works for the police. He has two cars there with keys available. They get into a fight about him cheating on her and go visit someone to sort that out. They go to pick up a car. He gives her keys to another car to drive home. And so, you know, regardless of her testimony, I don't think that there's sufficient evidence to establish that he acted knowingly and purposely to either kidnap her or hold her. And so I think that that's our primary position here based upon all of those facts and all of the chances that she did have to get away. This was obviously, how do you want to say it, a somewhat sick relationship. But she said she was afraid to try to leave him because he might beat her some more. And the jury apparently bought that. Well, man, she said that, among other things. And also she was afraid of losing custody of their daughter. So. Would you like to save time for one? I would, Judge. Thank you very much. Thank you very much. Good morning. Lori Sook for the United States. In reviewing this case and reading the appellant's brief, we did see that there was a sufficiency of evidence challenge. But because of the evidence presented at trial from the victim and from corroborating other evidence that she was pulled into the car, she was held against her will for a long period of time, three-plus hours, and had to escape into a casino when she felt safe because there were security guards there. The government did, in an abundance of caution, want to approach this case and cover every issue. And so that is why we did also address the legal issue of merger, thinking that that may be where the appellant was actually going here. And so we do have two issues raised here. Mr. Ness is absolutely right. But on both fronts, the government believes we win. Judge Alarcon, you're right. The jury did hear two very different views of what had occurred. The assaults, of course, he admitted. But Mr. Roundstone denies to this day that he held her against her will. That was not the testimony of the victim here, nor the neighbor, and it certainly wasn't supported by the other evidence, such as the only time she felt she could get away was when she saw the casino and the security guards. Now, it is true that they did go out during the day, but you need to look at all the record sites. Every single place where they went, it was a family member of his or a friend of his, and she did not feel that they would help her or that she could get away, even if that is a burden that we put on a victim to try and escape, which the Wesson case suggests that there is no such burden. But she did not feel that she could get away. She was afraid. And, yes, she did believe that he had some pull with the tribal court, but that wasn't why she went with him. If you read at Record Transcript 102, lines 7 through 10, she testified, he pulled me into the car. I did not want to go with him. In line 14, I told him to stop and let me go. And then right after, she said, I could not jump out. She gave him their daughter because she did not want to lose custody of their daughter, but she in no way intended to go with him. She was handing him their daughter so that he could have visitation with her. Could I ask you a question? Yes, sir. How was the jury instructed on the restraint element? What did the jury instruction say about what the jury had to find beyond a reasonable doubt? That she had to be held for no purpose. And that there was no other specific instruction, just the basic elements of kidnapping, that she was taken and held and restrained. My memory is that there was no other additional elaborative instruction given. And there's no objection to that instruction? No, there wasn't. And so just briefly, that is why the government did as well raise the legal issue of merger. It seemed to be one of the issues that the Chatwin case, the U.S. Supreme Court, and this court in Etcity was concerned about when you're dealing with a kidnapping, where there are other crimes that also occur during that time. In this case, we believe that if that would be a concern for the court at all, there were appreciable periods of time here separate and apart from any of the assaults that were committed where she was held. The appellant says they're not raising the merger issue. I agree, Judge. And so we raised it in an abundance of caution. Again, the appellant has said we're not raising it. I'm just making the point that we did that in an abundance of caution. That's because you don't know what we're going to do, maybe. Well, I try and predict. But if there are no further questions from the court. I have no questions. Thank you. Okay, Mr. Ness. I'll be very brief. Just as Ms. Sewick was speaking to the panel, I was looking back through the Chatwin case. And the Supreme Court in that case held, in looking at the federal kidnapping statute, the act of holding a kidnapped person for a prescribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent to confine the victim. And that, I think, is what I was getting at, Judge Alarcon, that the issue here is to look at the evidence in terms of the defendant's mental state. And while I would concede that the victim's feelings of whether or not she could leave is certainly relevant, I think that the real issue is whether or not the evidence supports a finding that he believed that he was holding her against her will, given all of the other facts of going around town and going to gas stations and things of that nature. So are you saying that if she believed she was restrained for all the things that he did to her, but he didn't believe that he was restraining her, that we should reverse this case? I think what she says is relevant. I would agree to that. It goes into the mix, but I don't think that that's the deciding factor, and that's what I'm saying. Because certainly, you know, victims can feel that they can't leave for any number of reasons, but the evidence may not support that reasonable belief. Is it your position that a rational jury could not conclude beyond a reasonable doubt that he intended to restrain her? That is my argument, yes, Judge. Thank you. Okay. Very interesting argument and, as usual, excellent arguments from Montana Council. Thank you.
judges: Schroeder, Alarcon, Gould